*No.* 18-1112 *Marwan F. Saleh, M.D. v. Angie Damron, et al.*

**ARMSTEAD, J., dissenting:**

This case involves a matter of first impression in West Virginia regarding whether an ectopic embryo meets the definition of a "person" as that term is used in the West Virginia Wrongful Death Statute, West Virginia Code § 55-7-5 (1931). Because the West Virginia Legislature has not clearly defined the term "person" in the context of this statute, this Court must review the language of the statute, the manner in which the Legislature has dealt with similar questions in other statutes, and the prior decisions of this Court to provide that definition. Because I believe these authorities weigh in favor of inclusion of an ectopic embryo within the meaning of "person" as contemplated by the statute, I respectfully dissent.

The majority opinion recognizes the governing case in West Virginia which determined that under our wrongful death statute, West Virginia Code § 55-7-5 (1931), an unborn child "encompasses a nonviable unborn child and, thus, permits a cause of action for the tortious death of such child." Syllabus Point 2, *Farley v. Sartin*, 195 W. Va. 671, 466 S.E.2d 522 (1995). Inexplicably, the majority opinion proceeds to limit the holding in *Farley* and determines that the same unborn child who, while clearly meeting the definition of "nonviable unborn child" set forth in *Farley,* somehow loses his or her status as a "person" after fertilization because the pregnancy is ectopic.

I agree with the majority opinion that because the Legislature has not clearly defined "person" that "the absence of a definition has rendered the Wrongful Death Statute

vague with respect to what is meant by the term 'person' as used therein." *Saleh v. Damron*, ___ W. Va. ___, ___, ___ S.E.2d ___, ___, 2019 WL 6258406, at *5 (W. Va. Nov. 22, 2019)(majority opinion). However, the majority opinion moves one hundred eighty degrees in the opposite direction of how this Court has held such vagueness should be resolved. In *Farley*, this Court clearly determined that, when the Legislature has not spoken as to the scope of the Wrongful Death Statute, any ambiguity should be resolved in favor of recovery, holding:

> The societal and parental loss is egregious regardless of the state of fetal development. Our concern reflects the fundamental value determination of our society that life—old, young, and prospective—should not be wrongfully taken away. *In the absence of legislative direction, the overriding importance of the interest that we have identified merits judicial recognition and protection by imposing the most liberal means of recovery that our law permits.*

*Farley*, 195 W. Va. 671, 682, 466 S.E.2d 522, 533 (1995) (emphasis added). In the present case, the majority opinion imposes, not the "most liberal means of recovery" but a restrictive interpretation that is unfounded in law or logic.

To reach its conclusion, the majority first cites other statutory enactments that it alleges support its determination that an ectopic embryo or ectopic fetus is not a "person."[1] For example, the majority opinion points to the Unborn Victims of Violence

---

[1] Even if the definitions contained in the Unborn Victims of Violence Act supported the majority opinion, which they do not, such provisions were specifically excluded by the Legislature from application in civil proceedings such as this:

> For the purposes of this article, the following definitions shall apply: Provided, **That these definitions only apply for purposes of prosecution of unlawful acts under this section**

Act enacted by the Legislature as somehow endowing personhood on an embryo or fetus only when such unborn child is in utero. *See W. Va. Code* § 61-2-30 (2005). However, that Act clearly states: "'Embryo' means the developing human in its early stages. The embryonic period commences at fertilization and continues to the end of the embryonic period and the beginning of the fetal period, which occurs eight weeks after fertilization or ten weeks after the onset of the last menstrual period." W. Va. Code § 61-2-30(b) (2005). Certainly, at the point of fertilization, which is the beginning of the embryonic period as defined by the Act, the unborn child is not "in utero." Nonetheless, the Legislature defined "embryo" as a point in human development that begins at fertilization.

Moreover, the Legislature carved out several specific exceptions to the Unborn Victims of Violence Act, including exception (3), which states that the provisions of the section do not apply to "[a]cts or omissions by medical or health care personnel or scientific research personnel in performing lawful procedures involving embryos that are *not in a stage of gestation in utero;"* W. Va. Code § 61-2-30(d)(3) (2005)(emphasis added). If, as the majority opinion states, the Legislature intended for the general language of Unborn Victims of Violence Act to use the terms "in the womb" and "in utero" as synonymous and to apply the Act only to unborn children in the uterus, such language

**and may not otherwise be used**: (i) To create or to imply that a civil cause of action exists; or (ii) **for purposes of argument in a civil cause of action, unless there has been a criminal conviction under this section.**

*W. Va. Code* § 61-2-30(b) (2005) (emphasis added).

carving out an exception for certain medical procedures involving embryos "not in a stage of gestation in utero" would be entirely unnecessary. In other words, the exception proves the rule.[2]

Likewise, while citing the The Pain-Capable Unborn Child Protection Act in support of it position that an ectopic embryo or ectopic fetus is not a "person," the majority opinion fails to acknowledge that such Act established that an unborn child exists at the time an ovum is fertilized by spermatozoon. *See W. Va. Code* § 16-2M-2(3) (2005); *See also W. Va. Code* § 16-2M-1(1) (2005) ("Pain receptors (**unborn child**'s entire body nociceptors) are present no later than sixteen weeks after **fertilization** . . . .")(emphasis added); *W. Va. Code* § 16-2M-1(2) (2005) ("By eight weeks after **fertilization**, the **unborn child** reacts to stimuli. . . .")(emphasis added). The enactments of the Legislature cited by the majority opinion simply do not support the conclusion that an ectopic embryo or an ectopic fetus is not a "person" under the Wrongful Death Statute. Instead, the legislative enactments cited by the majority reflect the Legislature's continued intent to recognize the overriding principle, as was annunciated by this Court in *Farley*, that "life – old, young, and prospective – should not be wrongfully taken away." *Farley*, 195 W. Va. 671, 682, 466 S.E.2d 522, 533 (1995).

---

[2]     Although subject headings of statutory code sections and articles are not black letter law, it is telling that, in the context of defining the term "person" in this action, the Unborn Victims of Violence Act is contained within Article 2 of Chapter 61 of the Code, entitled "Crimes against the ***Person***" *See W. Va. Code* § 61-2 (article title) (emphasis added).

The majority opinion relies heavily on the dicta contained in Footnote 3 of *Farley* which states "[w]e also explicitly limit this holding to unborn children who are en ventre sa mere and decline to address the issues that may arise with advances in medical technology now enabling conception outside the womb." *Farley*, 195 W. Va. 671, 672 n.3, 466 S.E.2d 522, 524 n.3 (1995). A clear reading of such language, however, does not support the giant leap taken by the majority opinion to reach its conclusion that this language bars recovery for the death of ectopic embryos or ectopic fetuses simply because they are not located in utero. This footnote expressly states that the *Farley* opinion does not address situations relating to medical advancements that allow "conception outside of the womb." *Id.* Clearly, this language was designed to distinguish the Court's holding from scenarios involving medically enabled "conception" outside of the woman's body. The majority opinion's leap to equate "outside the womb" with "outside the uterus" in all cases is misplaced. In a normal pregnancy, conception or fertilization does not typically take place in the uterus, but instead the fertilized egg implants into the uterus after fertilization. The majority opinion over-emphasizes and misinterprets this footnote as barring application of the Wrongful Death Statute to the death of any unborn child outside of the uterus. It clearly does not. Indeed, the sentence that precedes the portion of the footnote cited by the majority opinion states that, as used in the opinion the term "***unborn child***" is used to "encompass all stages of development after conception." *Id.* In its summary, the *Farley* Court concluded that "if death ensues as a result of a tortuously inflicted injury to a nonviable ***unborn child***, the personal representative of the deceased may maintain an

action pursuant to our wrongful death statute." *Id.*, 195 W. Va. 671, 684, 466 S.E.2d 522, 535 (1995).

Despite the language in *Farley* that clearly states our wrongful death statute should be "liberally construed," *Id.*, 195 W. Va. 671, 683, 466 S.E.2d 522, 534 (1995), the majority opinion has, conversely, narrowly construed *Farley*, improperly applied inapplicable definitions of "fetus" and "embryo," and stripped an unborn child of its status as a "person" under the Wrongful Death Statute.

Finally, the majority opinion has put the proverbial "cart before the horse." It is clear from *Farley*, as well as the statutory definitions of "embryo" contained in the legislative enactments discussed in both the majority opinion and this dissent, that the Legislature has determined that an "unborn child" begins development at conception. It is scientific fact that an ectopic pregnancy or ectopic embryo or ectopic fetus becomes ectopic after conception and prior to what, in a healthy pregnancy, would be normal implantation in the uterus. Pursuant to the holding in *Farley,* the conceived embryo would be considered a "person" under the Wrongful Death Statute, even though, at that stage of development, it would be considered nonviable. Indeed, in this case, the unborn child or embryo was found to have a gestational age of between six weeks one day and six weeks four days with a heart rate of 142 beats per minute.

The majority opinion has now declared that, in all cases, because the embryo failed to implant in the uterus as a healthy pregnancy due to its status as an ectopic pregnancy or ectopic embryo, the unborn child has lost its status as a "person" under the Wrongful Death Statute. Thus, regardless of the reasons or causes for the ectopic

pregnancy, and whether or not negligence resulted in the ectopic pregnancy, the mere fact that it is an ectopic pregnancy bars recovery in a Wrongful Death action. Such a result is unjust and unsupported by the law. In *Farley*, this Court held that the mere fact that an unborn child had not reached viability was not grounds to bar a wrongful death action. In so finding, the *Farley* Court held that "[i]n our judgment, justice is denied when a tortfeasor is permitted to walk away with impunity because of happenstance that the unborn child had not yet reached viability at the time of death." *Farley*, 195 W. Va. 671, 682, 466 S.E.2d 522, 533 (1995). It is unclear at this juncture whether the facts alleged in this case would establish liability in the event this case was permitted to proceed to trial. However, "justice is denied" when, regardless of fault, the fact that the pregnancy was ectopic automatically bars the action from proceeding because the unborn child is not deemed a "person."

As this Court held nearly twenty-five years ago in *Farley,* because the Legislature has not clearly defined "person" under the Wrongful Death Statute, "it is the duty of this Court to reach that decision which is most consistent with the purposes of the wrongful death law and which best comports with our sense of justice." In light of the language of the Wrongful Death Statute, our holding in *Farley*, as well as the language of subsequent enactments of the Legislature, I believe that recognition of an ectopic embryo or ectopic fetus as a "person" under the Wrongful Death Statute is the result which is most consistent with the purposes of such Act.

For these reasons, I respectfully dissent.